UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHNNA DOWNING,<br><br>*Plaintiff*,<br><br>v.<br><br>INSERRA SUPERMARKETS, INC.,<br><br>*Defendant*. | Case No. 24-CV-8667 (KMK)<br><br><u>ORDER & OPINION</u> |

<u>Appearances</u>:

Peter A. Iannuzzi, Esq.
Sobo & Sobo, LLP
Middletown, NY
*Counsel for Plaintiff*

Petter Joseph Murano, III, Esq.
Mitchell B. Levine, Esq.
Fishman McIntyre Berkeley Levine Samansky, PC
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Johnna Downing ("Plaintiff") brought this Action against Inserra Supermarkets, Inc. ("Inserra" or "Defendant"),[1] seeking monetary damages based on asserted negligence that led to a slip-and-fall accident that occurred at a ShopRite supermarket in Nyack, New York. (*See* Compl. 7.)[2] Before the Court is Defendant's Motion for Summary Judgment pursuant to Rule 56

---

[1] In her Complaint, Plaintiff named Shop-Rite Supermarkets, Inc., Oster Retail, LLC, and Inserra Supermarkets, Inc. as Defendants. (*See generally* Summons and Compl. (Dkt. No. 1-1).) The Parties quickly stipulated, however, that Inserra would be deemed the sole named defendant in this Action. (Not. of Removal. ¶ 4 (Dkt. No. 1).)

[2] When citing materials filed by the Parties, the Court refers to the page numbers as designated on the documents themselves, rather than those generated by the Court's Electronic Case Filing System.

of the Federal Rules of Civil Procedure (the "Motion"). (*See* Mot. for Summ. J. ("Mot.") (Dkt. No. 20).) For the reasons that follow, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are taken from the Parties' statements pursuant to Local Civil Rule 56.1, (*See* Def.'s Rule 56.1 Statement ("Def.'s 56.1") (Dkt. No. 23); Pl.'s Response to Def.'s Statement of Uncontroverted Material Facts Made Pursuant to Local Civ. R. 56 ("Pl.'s 56.1") (Dkt. No. 27)), and other admissible materials in the record. The facts are recounted "in the light most favorable to" Plaintiff, the non-moving Party. See *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021). The facts as described below are undisputed unless otherwise noted.

On September 13, 2022, at around 11 o'clock in the morning, Plaintiff was in a Shop Rite Supermarket, of which Defendant is the parent company, in West Nyack, New York with her daughter, Latasha Miller ("Miller"). (Pl.'s 56.1 ¶¶ 1, 3–4.) Plaintiff was standing at the front of the supermarket near the registers. (*Id.* ¶¶ 2, 5.) Miller was standing at the register, unloading groceries; Plaintiff left the register area and walked three aisles away, back into the store, to get bagels. (*Id.* ¶¶ 6–7.) Miller was not facing Plaintiff, but instead she was turned towards the register.[3] (*Id.* ¶¶ 31–33.) With her bagel run complete, Plaintiff returned to the register, at which point her "leg slid across something on the" white or light-colored "floor," and she fell to the ground. (*Id.* ¶¶ 8, 12, 36.)

---

[3] One of the sole points in dispute between the Parties is whether this checkout station was a self-checkout, as Miller recalls and Defendant claims, or a checkout with a cashier present, as Plaintiff recalls. (*Compare* Mot., Ex. D ("Downing Dep."), at 33:16–24 (Dkt. No. 20-4) *with* Mot., Ex. E ("Miller Dep."), at 23:3–17 (Dkt. No. 20-5); *see also* Pl.'s 56.1 ¶ 33.) The Court will assume for the purposes of deciding the Motion that, as Plaintiff claims, the register was a checkout station that had a cashier (*i.e.* a supermarket employee) present.

Plaintiff says that she saw a substance on the ground that "looked like water" and "was clear" without any dirt or debris. (*Id.* ¶¶ 9–10, 37.) To Miller and Plaintiff, there was no evidence of footprints or cart trails in or through the liquid. (*Id.* ¶¶ 11, 37.) The lighting conditions were normal and did not interfere with Plaintiff's visibility, there was nothing blocking or obstructing her view of the floor, and nothing had distracted Plaintiff; nevertheless, she did not see this water "at any time before she slipped on it," including during her bagel run. (*Id.* ¶¶ 13–16.) There were no visible "wet floor" or "caution" signs before Plaintiff's fall, and Plaintiff heard no announcement of a clean-up. (*Id.* ¶¶ 19–20, 41.)

Plaintiff said that she was "not looking at the floor" while she was walking, and was unsure that she would have seen the liquid even if she had been looking, because the substance was clear. (*Id.* ¶¶ 17–18.) Before the accident, Miller had not seen any substance on the floor, including when she entered the checkout lane. (*Id.* ¶ 34.) After Plaintiff's fall, Miller saw clear liquid on the floor nearby. (*Id.* ¶ 35.)

A staff member at the Shop Rite, Ceferina Santos ("Santos"), testified that it was the store's practice to have all employees "constantly" check for debris and slipping hazards as well as maintenance issues, approximately "every 10 to 15 minutes." (*Id.* ¶¶ 47–48.) In the event a hazard is identified, Santos explained, personnel must stand by the condition until a maintenance worker arrives to clean it up. (*Id.* ¶ 49.) Santos was on shift at the time of the accident, and was paged to come to the registers after Plaintiff fell. (*Id.* ¶¶ 50–51.) Plaintiff informed Santos the floor was wet and that Plaintiff had slipped, at which point Santos observed a clear liquid on the floor. (*Id.* ¶ 53.) It was hard to see given the light color of the floor, even given the lighting, which was typical. (*Id.* ¶¶ 56–57.) Santos had not been made aware of any complaints about the floor in the area of Plaintiff's accent prior to this interaction. (*Id.* ¶ 59.)

The Parties' only major point of dispute, (*see generally id.*; *see also id.* ¶ 58), appears to be the significance of the following testimony by Santos about the frequency with which the subject area of the floor had been cleaned prior to the accident:

> Q. Do you know the last – so the so the area where [Plaintiff] fell, do you know the last time an employee had been through that area prior to her fall?
> A. Employee – I would say ten minutes before.
> Q. And the area where she fell or where you got to when you got to [Plaintiff] do you recall the last time that area was cleaned prior to [Plaintiff]'s fall?
> A. We go through every ten minute – every 10/15 minutes, we go through all that area because it's a busy area, so we make sure that everything is clean at all the time.
> Q. And when you do that, like, every 10 to 15 minutes, is that just a quick walkthrough, or is that an actual cleaning of that walkway area?
> A. There's a sanitation [*sic*] that goes around and make [*sic*] sure that everything is clean. Or if I see something that it's sp[i]lled[4], I make sure that is – is clean right away.
> . . .
> Q. . . . [I]n terms of the Inserra Supermarket itself, back in and around September of 2022, how often would that store be cleaned? Would that be cleaned every day, every night, something else?
> A. Cleaned every single day.
> Q. Would that typically be in the morning, evening, or a combination of the two?
> A. All day around. We had someone going around every area, every aisle, cleaning.[5]

(Mot., Ex. F ("Santos Dep."), at 39:22–41:17 (Dkt. No. 20-6).) Relying on this testimony, Defendant states that "Ms. Santos indicated that the subject area of the floor was cleaned by store employees no more than 10 to 15 minutes prior to . . . [P]laintiff's accident." (Pl.'s 56.1 ¶ 58.) Plaintiff denies this claim. (*Id.*) However, she points to no additional evidence, but relies on the same testimony. (*See id.*) Accordingly, the sole evidence before the Court is that the store was

---

[4] In the transcript of Santos's deposition, this word appears as "spelled," but the Court determines that this reference to spelling was scrivener's error.

[5] In her Rule 56.1 Counterstatement, Plaintiff cites to "Page 42" of the deposition, lines 7 to 11. However, using the pagination on the document as it is described, those lines are not responsive to the statement of fact. The Court assumes that Plaintiff meant to reference Page 41 lines 7 to 11, which is the forty-second page in the PDF because the cover page is un-numbered.

cleaned frequently (at a minimum daily), and that staff members would monitor for spills every ten-to-fifteen minutes (though it may be the case that they did not clean every time they came through to inspect for spills).

B. Procedural Background

On April 19, 2024, Plaintiff commenced this Action in New York Supreme Court, County of Rockland. (*See* Summons and Compl.) On November 14, 2024, the Action was removed to federal court, on the basis of diversity jurisdiction, and assigned to this Court. (*See* Not. of Removal; Dkt. (Case Opening Initial Assignment Not.).) The Parties thereafter engaged in discovery and, once discovery was complete, Defendant sought leave to file a Motion for Summary Judgment. (*See* Letter to Court from Peter J. Murano. Esq. (Sept. 23, 2025) (Dkt. No. 16).) Plaintiff opposed. (*See* Letter to Court from Peter A. Iannuzzi, Esq. (Sept. 29, 2025) (Dkt. No. 17).)

At a pre-motion conference on October 6, 2025, the Court set a briefing schedule. (*See* Dkt. (minute entry for proceedings held on October 6, 2025).) On October 29, 2025, Defendant filed its Motion (*see* Mot.), and on November 6, 2025, it filed its Memorandum of Law in support thereof, (*see* Mem. of Law in Supp. re: Mot. for Summ. J. ("Def.'s Mem.") (Dkt. No. 21).) On December 4, 2025, Plaintiff filed her Memorandum of Law in Opposition. (*See* First Mem. of Law in Opp'n re: Mot. for Summ. J. ("Opp'n") (Dkt. No. 26).) On December 17, 2025, Defendant filed its Reply Memorandum. (*See* Reply Mem. of Law in Supp. re: Mot. for Summ. J'ment ("Reply") (Dkt. No. 28).)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider "only evidence that would be admissible at trial." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the]

[p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal quotation marks omitted)).

B. Analysis

1. Negligence under New York Law

To establish a negligence claim under New York law, "a plaintiff must show: (1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damages as a proximate result of that breach." *Casiano v. Target Stores*, No. 06-CV-6286, 2009 WL 3246836, at *3 (E.D.N.Y. Sept. 24, 2009) (citing *Solomon v. City of New York*, 489 N.E.2d 1294 (N.Y. 1985)); *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (substantively same).[6]

As to the first element, it is undisputed that "[p]roperty owners must maintain their premises in a reasonably safe condition under the circumstances." *Peters v. Whole Foods Mkt. Grp., Inc.*, 801 F. Supp. 3d 209, 213 (S.D.N.Y. 2025) (citing *Basso v. Miller*, 352 N.E.2d 868 (N.Y. 1976)); *see also Chaney v. Starbucks Corp*, 115 F. Supp. 3d 380, 386 (S.D.N.Y. June 23,

---

[6] There is a related duty to warn others of a hazard. *See Silvestri v. Kohl's Dep't Stores, Inc.*, No. 19-CV-10550, 2022 WL 2971988, at *4 (S.D.N.Y. July 27, 2022) (describing the duty to warn of a hazard and the duty to maintain the premises in a reasonably safe condition as "distinct" but also noting that the "latter may include the former" (internal quotation marks omitted) (citing *Borley v. United States*, 22 F.4th 75, 82 (2d Cir. 2021) and *Zubillaga v. Findlay Teller Hous. Dev. Fund Corp.*, 153 N.Y.S.3d 14, 18 (App. Div. 2021))). Here, the duty to maintain the premises, rather than the duty to warn, provides the appropriate inquiry. *Id.* at *5 ("[S]lip and fall actions concerning conditions arising from incidental spills generally focus on the duty of reasonable care, which demands review of whether the property owner in fact created the so-called condition and or whether the property owner had actual or constructive notice of the condition; by contrast, negligence claims concerning permanent or semipermanent fixtures on which visitors trip generally focus on the duty to warn, which demands inquiry into whether the condition was open and obvious and whether it was inherently dangerous." (citations omitted)).

2015) ("Generally, under New York law, 'landowners owe people on their property a duty of reasonable care under the circumstances to maintain their property in a safe condition.'" (quoting *Tagle v. Jakob*, 763 N.E.2d 107, 108–09 (N.Y. 2001))). The reasonable care standard "account[s] for the possibility of injury to others, the seriousness of such injury, and the burden of avoiding such risk." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 117 (2d Cir. 2000) (citing *Basso*, 352 N.E.2d at 872).

In a premises liability slip-and-fall case such as this one, a plaintiff must first demonstrate "the existence of a dangerous or defective condition" that caused the accident. *Vasquez v. United States*, No. 14-CV-1510, 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016) (quoting *Winder v. Exec. Cleaning Servs., LLC*, 936 N.Y.S.2d 687, 687 (App. Div. 2012)). However, "[t]he mere existence of a foreign substance, without more, is insufficient to support a claim of negligence." *Segretti v. Shorenstein Co., E., L.P.*, 682 N.Y.S.2d 176, 178 (App. Div. 1998). Second, the plaintiff "must demonstrate that the defendant either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it." *Decker v. Middletown Walmart Supercenter Store*, No. 15-CV-2886, 2017 WL 568761, at *4 (S.D.N.Y. Feb. 10, 2017) (alterations and internal quotation marks omitted); *see also Silvestri v. Kohl's Dep't Stores, Inc.*, No. 19-CV-10550, 2022 WL 2971988, at *4 (S.D.N.Y. July 27, 2022) (substantively same).

2. Actual Notice & Creation of Defective Condition

Plaintiff does not point to *any* facts to support the conclusion that Defendant created the defective condition or had actual notice of it. (*See generally* Pl.'s 56.1.) There is no hint in the statement of facts or material submitted in conjunction with the motion that "[D]efendant[] w[as], in fact, aware of the dangerous condition," *Wilson v. Wal-Mart Stores E., LP*, No. 16-CV-

08637, 2018 WL 4473342, at *7 (S.D.N.Y. Sept. 18, 2018) (quoting *Castellanos v. Target Dep't Stores, Inc.*, No. 12-CV-02775, 2013 WL 4017166, at *4 (S.D.N.Y. Aug. 7, 2013)), such as the Defendant "receiv[ing] reports of [the] dangerous condition," *Peters v. Whole Foods Mkt. Grp., Inc.*, 801 F. Supp. 3d 209, 213 (S.D.N.Y. 2025). *See also Pimentel v. Target Corp.*, No. 23-CV-8502, 2025 WL 1826570, at *4 (S.D.N.Y. July 2, 2025) (collecting cases where a defendant store was treated as lacking actual notice of a dangerous condition because all available evidence did not indicate that employees had observed the substance). Here, Plaintiff admitted that she was unaware whether anyone had complained to the store employees about the water before her accident. (Downing Dep. 52:7–11.) There were no indicia that staff had been made aware of the spill, such as wet floor signs, caution signs, or barricades. (*Id.* at 47:13–17.) Plaintiff reported that none of the employees she spoke with that day told her that they had been aware of the liquid on the floor. (*Id.* at 56:2–10.) Miller reported the same. (Miller Dep. at 41:4–8; *see also id.* at 39:24–40:4.) Further, Plaintiff has not argued that Defendants could be liable on such a theory. (*See generally* Pl.'s Mem..) Therefore, the Court addresses only a constructive notice theory of liability. *Watts v. Wal-Mart Stores E., L.P.*, No. 16-CV-4411, 2018 WL 1626169, at *4 (S.D.N.Y. Mar. 29, 2018) (addressing exclusively constructive notice theory of liability where the plaintiff did not contend that the defendant created the defective condition or had actual notice of the condition).

3. Constructive Notice

To provide "constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 274 (S.D.N.Y. 2024) (quoting *Gordon v. American Museum of Natural History*, 492 N.E.2d 774 (N.Y. 1986)); *see also*

*Pimentel*, 2025 WL 1826570, at *4 (substantively same). Therefore, a plaintiff "must present proof of either how the substance got there or how long it was there before the fall." *Cousin v. White Castle Sys., Inc.*, No. 06-CV-6335, 2009 WL 1955555, at *8 (E.D.N.Y. July 6, 2009); *see also Peters*, 801 F. Supp. 3d at 213 (same).

To establish constructive notice, a plaintiff may rely on notice inferred from "the circumstances surrounding the injury and the condition of the premises." *Touri v. Zhagui*, No. 06-CV-776, 2010 WL 779335, at *3 (S.D.N.Y. Mar. 5, 2010) (citing *Lusenskas v. Axelrod*, 592 N.Y.S.2d 685 (App. Div. 1992)); *see also Kirbaran*, 720 F. Supp. 3d at 274–75 (same); *Buckstine v. Schor*, 213 A.D.3d 730, 731 (App. Div. 2023) ("A plaintiff's inability to testify as to how an accident occurred does not require dismissal where negligence and causation can be established with circumstantial evidence, but the record must render the other possible causes sufficiently remote to enable the trier of fact to reach a verdict based upon the logical inferences to be drawn from the evidence, not upon speculation." (alteration, citation, and internal quotation marks omitted)). However, the proof provided to support that inference must suggest that the spill was "there long enough to blame [the] defendant for the accident," *Lacey v. Target Corp.*, No. 13-CV-4098, 2015 WL 2254968, at *4 (E.D.N.Y. May 13, 2015), and "a jury should not be allowed to conclude, based on 'mere speculation,' that a condition was visible and apparent for a sufficient length of time to be discovered and remedied," *Painchault v. Target Corp.*, No. 09-CV-1831, 2011 WL 4344150, at *4 (E.D.N.Y. Sept. 14, 2011) (quoting *Bluman v. Freeport Union Free Sch. Dist.*, 772 N.Y.S.2d 527, 528 (App. Div. 2004)).

"A plaintiff may also establish premises liability if the dangerous condition would have been discovered through a reasonable inspection, but defendant failed to conduct such an inspection." *Cuello v. Target Corp.*, No. 22-CV-02013, 2023 WL 4763234, at *4 (S.D.N.Y. July

26, 2023). "Courts differ on whether a failure to inspect is a means for establishing constructive notice or a separate obligation that displaces the need for notice when imposing premises liability." *Wilson*, 2018 WL 4473342, at *8 (internal quotation marks and citation omitted); *see also Cuello*, 2023 WL 4763234, at *4 (collecting cases). "Either way, under a 'failure to inspect' theory, [the plaintiff] must still come forward with evidence showing that a reasonable inspection would have revealed the condition." *Wilson*, 2018 WL 4473342, at *8.

Further, proof of "[a]n inspection within the hour of an accident is generally sufficient under New York law to show lack of constructive notice." *Henry v. Target Corp.*, No. 16-CV-8416, 2018 WL 3559084, at *5 (S.D.N.Y. July 24, 2018); *see also Mantzoutsos v. 150 St. Produce Corp.*, 907 N.Y.S.2d 34, 35 (App. Div. 2010) (granting summary judgment for the defendant where it had, among other things, offered evidence that "sometime within the hour immediately before the injured plaintiff fell," the manager "had inspected the . . . aisle and did not observe any . . . dangerous condition on the floor").

The evidence here is insufficient to establish constructive notice. It is essentially undisputed that the spill was not visible and apparent. The lighting in the area was normal and Plaintiff had no difficulty seeing but, nevertheless, did not observe any water or liquid on the floor during her bagel run. (Downing Dep. 47:7–12.) The floor itself was "white," which presumably would make a clear spill more difficult to see. (*Id.* at 49:25.) Plaintiff's daughter, Miller, said that Plaintiff was just two feet behind Miller when she fell, (Miller Dep. 18:4–10), and that Miller had not noticed anything on the floor when she walked through this area, (*id.* at 25:5–6), (though she had not been looking down while she walked, (*id.* at 27:2–3)). A plaintiff who, by her own testimony, did "not notice the puddle," and offers "no evidence regarding . . . how long the liquid had been on the floor," typically cannot survive a motion for summary

judgment on a constructive notice theory because "it would be speculative to infer that [the liquid] had been on the floor for an appreciable length of time." *Casiano*, 2009 WL 3246836, at *4 (quotation marks omitted); *see also Leandro v. Wal-Mart Supercenter Store #2104*, No. 19-CV-2108, 2021 WL 2742622, at *9 (S.D.N.Y. June 30, 2021) ("Courts have found insufficient evidence to raise a triable issue of fact regarding whether a condition was visible and apparent where a plaintiff did not see the condition prior to a fall, or offer evidence that others saw the condition prior to the fall." (quotation marks and citation omitted, alteration adopted)). So too here.

Further Plaintiff offers no explanation—either in materials submitted in conjunction with this Motion or her opposition memorandum—for how the liquid came to be on the floor or how long it had been there. (*See generally* Opp'n; Pl.'s 56.1.) And there are no such materials in the record that establish that the hazard came about as a result of Defendant's negligence or persisted for a sufficient amount of time to support constructive notice. For instance, during her deposition, Plaintiff explained that she did not know how long the water had been present on the floor before the accident, and that she had no idea how the spill came to be on the floor. (Downing Dep. at 51:18–52:6.) Miller said the same. (Miller Dep. at 39:14–23.) Accordingly, there is no direct "proof of either how the substance got there or how long it was there before the fall" that would allow a factfinder to determine that the substance had been there for a sufficient duration long enough or in a manner that would put Defendant on notice. *Cousin*, 2009 WL 1955555, at *8.

Nor does circumstantial evidence exist that would allow an inference of constructive notice. Testimony that the "water [that was part of a spill] was 'very clear' and that there were 'no black marks, or discoloration, or footprints in it,'" is suggestive of a spill being present for a

duration too brief to provide constructive notice. *Pimentel*, 2025 WL 1826570, at *4; *see also Rivera v. Target Dep't Store, Inc.*, No. 15-cv-7846, 2017 WL 2709745, at *7 (S.D.N.Y. June 22, 2017) ("Plaintiff offers no circumstantial evidence concerning the condition of the puddle—such as the presence of debris, footprints or trackmarks—from which the duration of its existence can be inferred."). Here, Plaintiff testified that the substance she slipped on "looked like water" and "was clear." (Downing Dep. 38:10–11.) When asked whether it had dirt, trash, or debris, she again reiterated that the water "was clear." (*Id.* at 48:25–49:3.) Miller, too, described the substance as "a clear liquid," (Miller Dep. 27:23), recalled no dirt, garbage, or debris in the substance, (*id.* at 41:25–42:5), and recalled no "footprints . . . or cart[] [tracks] trailing through it," (*id.* at 42:6–9).

Further, under New York law, Defendant need not "offer any evidence showing that their cleaning and inspection practices would have revealed the existence of a dangerous condition," *Leandro*, 2021 WL 2742622, at *11 (alteration adopted and quotation marks omitted). Nevertheless, Defendant has done so, and the store's policy as set out in the papers further suggests that there is no dispute on this material fact. (*See* Def.'s 56.1.) Santos, at the time the store's night manager, stated that the store's procedure was to "constantly" check aisle for debris "to prevent any accident," and that multiple employees were in charge of going through the store and monitoring for hazards. (Santos Dep. 20:14–24.) She estimated that every ten to fifteen minutes such a check would occur, and that all employees had responsibility for checking. (*Id.* at 21:2–7.) The only facts relevant to the frequency of checking for hazards suggest that employees inspected approximately every ten to fifteen minutes. This duration is categorically insufficient to establish constructive notice of the spill. *See Leandro*, 2021 WL 2742622, at *11 (collecting cases); *Mehta v. Stop & Shop Supermarket Co.*, 12 N.Y.S.3d 269, 271 (App. Div.

2015) (holding that where a hazard is present for only "10 to 15 minutes" prior to the plaintiff's accident, this duration is insufficient to establish constructive notice); *Tkach v. Golub Corp.*, 265 A.D.2d 632, 633–34 (App. Div. 1999) (holding that there was no material question of fact where supermarket employees had a practice of ensuring floor was free of spills every ten to fifteen minutes, and employee working on the date of the accident testified that she had checked the area five minutes before plaintiff fell and did not find a spill); *McClarren v. Price Chopper Supermarkets Inc.*, 640 N.Y.S.2d 702, 702 (App. Div. 1996) (granting summary judgment where grocery store employees testified that area was "inspected approximately 3 to 5 minutes prior to the accident and found to be clean and dry").

In her Opposition to Defendant's Memorandum of Law, Plaintiff offers no real theory of constructive notice. (*See generally* Opp'n.) Instead, she claims that Defendant was required at summary judgment to "establish that the [hazard] would not be visible and apparent to a reasonable inspection by [its] employees." (Opp'n 4 (citing *Villano v. Strathmore Terrace Homeowners Ass'n, Inc.*, 76 A.D.3d 1061 (App. Div. 2010).). In its Reply, Defendant faults Plaintiff for relying on "state court cases—not . . . Federal Court jurisprudence" in support of her legal arguments, including the obligation to establish that a reasonable inspection would not reveal the hazard. (*See* Reply 6.)[7]

Under the *Erie* doctrine, "federal courts sitting in diversity," as in this Action, "apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Hums., Inc.*, 518 U.S. 415, 427 (1996); *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "[P]rocedural law is

---

[7] The Parties appear to agree, correctly, that federal law supplies the appropriate standard of review. (*See* Opp'n 1–3 (citing federal precedent for standard of review on summary judgment); Def.'s Mem. 5–7 (same).)

'the judicial process for enforcing rights and duties recognized by substantive law,' while substantive law is 'the law that governs the rights and obligations of individuals within a given jurisdiction.'" *Gonzalez v. United States*, 80 F.4th 183, 193–94 (2d Cir. 2023) (quoting *Corley v. United States*, 11 F.4th 79, 85 (2d Cir. 2021)). So, to the extent that Plaintiff cited state cases for the substantive law that governs her claims, she was correct to do so.[8]

In light of *Erie*, the question is whether the requirement Plaintiff cites—that a Defendant demonstrate a reasonable inspection of the property would not have revealed the defect—is a substantive or procedural rule. The answer is somewhat nuanced: while Plaintiff could proceed on a theory of liability based on a defendant's failure to inspect the premises, *see, e.g.*, *Cuello*, 2023 WL 4763234, at *4 (explaining this as a potential theory), Plaintiff would bear the burden of demonstrating some evidence to support the failure to reasonably carry out such inspection. That is because the burden of proof at summary judgment is a procedural rule governed by federal law. *See, e.g.*, *Demelio v. Wal-Mart Stores E., LP*, No. 21-CV-1900, 2023 WL 2480192, at *3 (S.D.N.Y. Mar. 13, 2023) (explaining that the burden of proof in federal court in a slip and fall case requires no "*prima facie* showing" by the moving party, but instead that the moving party may "merely . . . point[] to the absence of evidence to support an essential element of [the] claim" (quotation marks and citation omitted)); *Rodriguez v. Wal-Mart Stores East, LP*, No. 16-cv-2603, 2017 WL 4045745, at *3 (S.D.N.Y. Sept. 11, 2017) ("While in New York state court the [d]efendant would have to demonstrate it neither created the condition nor had notice of it, in

---

[8] Indeed, these citations are often preferable to federal court citations on state substantive law issues; after all, state courts—rather than federal courts—are the "arbiter[s] of what is state law." *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 236 (1940); *see also Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011) (same); *Mannix v. Phillips*, 619 F.3d 187, 199 (2d Cir. 2010) ("[S]tate courts are the ultimate expositors of state law.").

federal court the [d]efendant . . . may point to the absence of evidence . . . and . . . shift the burden to the [p]laintiff to create an issue for trial. . ."); *Vasquez v. United States*, No. 14-CV-1510, 2016 WL 315879, at *7–8 (S.D.N.Y. Jan. 15, 2016) (rejecting a slip-and-fall plaintiff's argument that the defendant had a "supposed initial burden to demonstrate" cleaning or inspection practices, and explaining that the "[d]efendant need not offer any evidence" at summary judgment but may instead "demonstrate that [the p]laintiff lacks affirmative proof sufficient to establish a genuine issue of fact with respect to the element of notice"). As explained above, Plaintiff has failed to do so. Further, the only materials before the Court suggest that Defendant's inspection practices were reasonable and did not, in fact, reveal the hazard.[9]

For the above-described reasons, there is no dispute of material fact as to Plaintiff's negligence claim, and Defendant is entitled to summary judgment.

---

[9] In her pre-motion letter opposing Defendant's request to file the Motion for Summary Judgment, Plaintiff's counsel represented that the proximity between an employee, Juliette Moran, and the spill that led to Plaintiff's fall, was sufficient to place Defendant on constructive notice of the wet floor. (*See* Letter from Peter A. Iannuzzi, Esq. to Court (Sept. 29, 2025) 2 (Dkt. No. 17).) As Plaintiff has not argued this point in her Opposition Memorandum, the Court deems it abandoned. *See, e.g.*, *Harris v. N.Y.C. Hum. Res. Admin.*, No. 20-CV-2011, 2022 WL 3100663, at *14 (S.D.N.Y. Aug. 4, 2022) ("Generally, a party forfeits arguments not sufficiently argued in the briefs."); *Sali v. Zwanger & Pesiri Radiology Grp., LLP*, No. 19-275, 2020 WL 6826272, at *1 n.2 (E.D.N.Y. Nov. 20, 2020) ("The [c]ourt deems abandoned any claimed violations not addressed in [the plaintiff's] memorandum of law."). In any event, "[p]roximity, alone, is insufficient to establish constructive notice." *Cooper v. Wal-Mart Stores, Inc.*, No. 24-CV-205, 2025 WL 1617071, at *9 (S.D.N.Y. June 6, 2025) (collecting cases). Indeed, some courts have remarked that "the fact that other customers or employees walked through [an] area [with a hazard] prior to [an] accident, were not impeded by the dangerous condition, did not appear to look down at it, or try to walk around it[,] supports the view that [the p]laintiff has not established constructive notice." *Id.*

## III. Conclusion

For the reasons set forth above, the Motion for Summary Judgment is granted. The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 20, enter judgment for Defendant, and close this case.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge